FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 15, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.   2:20-cr-00092-SMJ-1 |
| Plaintiff, | |
| v. | **ORDER DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION** |
| JOSE CONTRERAS-AGUILAR, | |
| Defendant. | |

The Court granted Defendant Jose Contreras-Aguilar's motion to suppress, finding the warrant issued in this case violated the Fourth Amendment. *See generally* ECF No. 47. The Government now moves for reconsideration. ECF No. 48. Finding no manifest error in its prior ruling, *see* L. Crim. R. 12(c)(5), the Court denies the Government's motion for reconsideration. This Order shall clarify and supplement the Court's prior Order granting Contreras-Aguilar's motion to suppress, ECF No. 47.

**DISCUSSION**

**A.    Particularity**

The Government first asks this Court to reconsider its determination that the warrant lacked particularity. *See* ECF No. 48 at 2–4. Finding no manifest error, this

ORDER DENYING GOVERNMENT'S MOTION FOR
RECONSIDERATION – 1

court denies the Government's request for reconsideration of this issue.

To begin with, the Court agrees with the Government that the search warrant incorporated the attached affidavit. *See* ECF No. 48 at 2; *see also* ECF No. 47 at 8. It also recognizes on reconsideration that the affidavit *did* specify that the prerecorded buy money was U.S. currency. *See id*. Even so, it finds that fact does not alter the outcome of its analysis. The Court disagrees with the Government's argument that specifying the denomination of the bills adds no required particularity to the search warrant. *But see* ECF No. 48 at 3. The Court also finds the Government misconstrues the Court's Order. *See id*.

The Court did not determine particularity would be satisfied if the warrant had listed only four $100 bills *without* also including the buy money's prerecorded serial numbers, as the Government reads its Order. *See id*. Instead, because the warrant in question already included the buy money's prerecorded serial numbers, the Court assumed the inclusion of serialized bills would be necessary to satisfy the particularity requirement. Besides the serial numbers it assumed were required for particularity, it determined that the warrant should have also listed the denominations of the bills subject to seizure. Without specifying which denominations of bills were subject to seizure, the Court found the warrant failed to satisfy the Fourth Amendment's particularity requirement. See ECF No. 47 at 8–9.

ORDER DENYING GOVERNMENT'S MOTION FOR
RECONSIDERATION – 2

The Court determined a warrant authorizing a general search for all denominations of U.S. currency (and requiring officers to review all the U.S. currency found for the correct serial numbers) was not sufficiently particular, because limiting the scope of the search to only the four $100 bills bearing the particular serial numbers was not only possible but easily achievable. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009) ("Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible.") (quoting *United States v. Spilotro,* 800 F.2d 959, 963 (9th Cir. 1986)). There was no need to authorize a search for all denominations of bills because "the government knew exactly what it needed and wanted"—that is, four $100 bills bearing particular serial numbers. *See VonderAhe v. Howland*, 508 F.2d 364, 370 (9th Cir. 1974). The Court can only surmise that law enforcement omitted the denominations of the bills from the warrant due to carelessness or to broaden the scope of the search. But in either event, that error rendered the warrant fatally flawed.

In determining whether a warrant is sufficiently particular, the Ninth Circuit has outlined three factors for consideration:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

ORDER DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION – 3

*United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006) (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)). Here, probable cause did not exist to search for and to seize all U.S. currency; it existed to search for and to seize only the four $100 bills bearing particular serial numbers used to complete the controlled buy. Law enforcement knew the exact description of the money used in the controlled buy. Yet the warrant and incorporated affidavit failed to identify the denominations of bills. While that failure may not have affected the U.S. currency ultimately subject to seizure (only the four $100 bills bearing the particular serial numbers), omitting the denominations of the bills improperly broadened the scope of the *search*. As a result, the warrant broadly authorized a general, exploratory search for all denominations of U.S. currency to determine whether such currency bore the correct serial numbers. The Government could have easily described the U.S. currency subject to seizure more particularly given the information available to it when the warrant was issued. *See Adjani*, 452 F.3d at 1148. For these reasons, the Government's motion for reconsideration of this issue is denied.

The Court also disagrees with the Government's arguments about the broad category of unspecific documents subject to seizure under the dominion and control authorization. *See* ECF No. 48 at 3. Contrary to the Government's view, ECF No. 48 at 3, a warrant cannot give law enforcement unfettered discretion (however reasonably executed) to determine which items are subject to seizure. *See Adjani*,

452 F.3d at 1148; *accord United States v. Zemlyansky*, 945 F. Supp. 2d 438, 453 (S.D.N.Y. 2013) (quoting *United States v. Riley*, 906 F.2d 841, 844 (2d Cir. 1990) ("Courts implement the particularity requirement by insisting that warrants not 'leave to the unguided discretion of the officers executing the warrant the decision as to what items may be seized.'"). The warrant at issue provided no "objective standards by which executing officers [could] differentiate [which dominion and control documents were] subject to seizure from those which [were] not." *See Adjani*, 452 F.3d at 1148. The authorization here was not only vague but overbroad. And the Government could have easily described the dominion and control documents subject to seizure more particularly given the information available to it when the warrant was issued. *See id*.

In *Spilotro*, 800 F.2d at 964, for example, the "warrant authorized, among other things, the seizure of address books, notebooks, notes, documents, records, assets, photographs, and other items and paraphernalia evidencing violations of the multiple criminal statutes listed." There, "[t]he government did not know, or at least did not recite, the precise identity, type, or contents of the records sought." *Id*. The *Spilotro* court determined "a more precise description of the items sought was possible," and the "warrant should have named or described those particular items." *Id*. "For instance, the warrant might have authorized the seizure of records relating to loan sharking and gambling, including pay and collection sheets, lists of loan

ORDER DENYING GOVERNMENT'S MOTION FOR
RECONSIDERATION – 5

customers, loan accounts and telephone numbers, line sheets, bet slips, tally sheets, and bottom sheets." *Id*. (citation and internal quotation marks omitted).

This case is like *Spilotro*. Here, the general authorization allowed for the search and seizure of "[d]ocuments tending to establish dominion and control of the location to be search[ed] and of any items seized." ECF No. 28-1 at 1. As for documents establishing dominion and control of the premises, the warrant might have authorized, for example, the seizure of titles, leases, mail, identification cards, and the like. *See* ECF No. 47 at 9. As for documents establishing dominion and control of the prerecorded buy money, the warrant might have authorized the seizure of paper or electronic ledgers documenting the drug sale or phone records documenting the drug sale with the confidential informant. *See id*. at 9–10. Like *Spilotro*, 800 F.2d at 964, a more precise description of the dominion and control documents that law enforcement sought was possible, and the "warrant should have named or described those particular items." *Id*. "By failing to describe with any particularity the [types of documents] to be seized, the warrant is indistinguishable from the general warrants repeatedly held by this court to be unconstitutional." *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995) (alteration added).

For these reasons, the Government's motion for reconsideration of this issue is denied.

//

ORDER DENYING GOVERNMENT'S MOTION FOR RECONSIDERATION – 6

**B.     Overbreadth**

Next, the Government asks this Court to reconsider its determination that probable cause did not exist over the location to be searched. *See* ECF No. 48 at 4–5. Finding no manifest error, this Court denies the Government's request for reconsideration of this issue.

"'[P]robable cause means a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of circumstances.'" *SDI Future Health*, 568 F.3d at 703 (quoting *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007)); *see also Illinois v. Gates*, 462 U.S. 213, 238 (1983) (reaffirming "the totality-of-the-circumstances analysis that traditionally has informed probable cause determinations.").

Here, the affidavit merely discloses that—after the controlled buy took place at a different location—a surveillance team tailed Contreras-Aguilar to a home in Warden, Washington. "No facts are recited from which it could be inferred that [Contreras-Aguilar was] other than [a] casual social guest[] at the residence." *See United States v. Bailey*, 458 F.2d 408, 412 (9th Cir. 1972); *see also Greenstreet v. Cty. of San Bernardino*, 41 F.3d 1306, 1309 (9th Cir. 1994) ("Merely stating that [defendant] was surveilled to [a] residence, without any other information as to his activities [at that residence], 'is not sufficient to permit an inference' that [defendant] was other than a 'casual social guest' at [that] residence.") (alterations

ORDER DENYING GOVERNMENT'S MOTION FOR
RECONSIDERATION – 7

added) (quoting *Bailey*, 458 F.2d at 412).

The affidavit makes no connection between criminal activity for which Contreras-Aguilar was under investigation and the Warden residence besides saying that officers followed Contreras-Aguilar to the residence after the controlled buy. *Cf. Greenstreet*, 41 F.3d at 1309–10. This Court disagrees with the Government that its prior Order was internally inconsistent. ECF No. 48 at 4–5. Just because probable cause existed to to seize the Contreras-Aguilar from within the residence, does not mean probable cause existed over the 'location to be searched.' Contreras-Aguilar could have been there for many reasons, *Greenstreet*, 41 F.3d at 1309–10, and the affidavit here does not support an inference that he stashed the controlled buy money in some hidden location within the house. *But see* ECF No. 48 at 4–5. As this Court may infer that Contreras-Aguilar was only a "casual social guest," *Greenstreet*, 41 F.3d at 1309–10, probable cause existed to seize him from the residence and to search his person. Had the officers not found the prerecorded money during the search incident to arrest, that may have supported a reasonable inference (i.e., a fair probability) that the prerecorded buy money was somewhere else, like the house or the vehicle. As it turned out, the prerecorded buy money *was* on his person; it was in his wallet. But law enforcement only discovered the prerecorded buy money after first conducting an general, exploratory search of the entire house for money and documents.

ORDER DENYING GOVERNMENT'S MOTION FOR
RECONSIDERATION – 8

The Government argues "nothing requires proof that the Defendant lived at the residence." ECF No. 48 (citing *United States v. Crews*, 502 F.3d 1130, 1137 (9th Cir. 2007) (finding the good faith reliance exception applicable and thus not addressing whether the affidavit demonstrated that Crews was anything but a casual social guest)). That may be true, but *Crews* relied on the "good faith" exception to the probable cause requirement without "embarking on the exercise of determining whether the affidavit supported probable cause." *See* 502 F.3d at 1136. "[C]ourts have discretion in deciding whether to address the issue of probable cause before turning to the issue of good faith reliance." *Id*. In this case, this Court exercised its discretion and found, like *Greenstreet*, that the affidavit did not provide a substantial basis for the state district court judge's conclusion that the affidavit supported probable cause to search residence. *Compare* ECF No. 47 at 13 (finding "the only link to the residence described in the warrant involves the fact that Contreras-Aguilar drove there after he sold the drugs to confidential informant"), *with Greenstreet*, 41 F.3d at 1309 (holding the survelliance evidence only permits an inference that defendant was a "casual social guest" of the residence). Given the bare bones facts over the location to be searched, the totality of circumstances did not support a fair probability that contraband or evidence of a crime would be found anywhere other than on Contreras-Aguilar's person. For these reasons, the Government's motion for reconsideration of this issue is denied.

ORDER DENYING GOVERNMENT'S MOTION FOR
RECONSIDERATION – 9

### C.     Good-Faith Reliance Exception

Finally, the Government asks the Court to reconsider its determination that the good-faith reliance exception does not apply. *See* ECF No. 48 at 6. The Government argues "the Court misconstrued the standard that warrant must be '*so facially deficient . . . that the executing officers cannot reasonably presume it to be valid.*'" *Id.* (Government's emphasis) (quoting *United States v. Underwood*, 725 F.3d 1076, 1085 (9th Cir. 2013)). This Court disagrees that it misconstrued the standard.

"Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid." *Groh v. Ramirez*, 540 U.S. 551, 563 (2004). The Court found the warrant here plainly did not comply with the particularity requirement—it was both vague and overbroad. Because this Court found the warrant here facially deficient (and thus by implication, no objective officer could reasonably presume it to be valid), it concluded the Government's argument *per se* fails. *See* ECF No. 47; s*ee also United States v. Stubbs*, 873 F.2d 210, 212 (9th Cir. 1989) (holding because the warrant was facially invalid, law enforcement could not have reasonably relied on it in good faith); *United States v. Washington*, 797 F.2d 1461, 1473 (9th Cir. 1986) (holding because two sections of the warrant were overbroad, that rendered the warrant so facially deficient that any

ORDER DENYING GOVERNMENT'S MOTION FOR
RECONSIDERATION – 10

evidence obtained relying on either of them must be suppressed).

Following the hearing on the Government's motion for reconsideration, the Government filed a notice of supplemental authority. ECF No. 53. The Government directs this Court to *United States v. King*, No. 20-10007, 2021 WL 127828 (9th Cir. Jan. 14, 2021), which cites a few cases discussing the good-faith reliance standard. But this case helps the Government little.

*King* affirmed the district court's ruling denying defendant's motion to suppress because it concluded the warrant was supported by probable cause and was sufficiently particular. *See generally id*. It also held "the good-faith exception . . . justifies denying the suppression motion here." *Id*. at *5.

First, this Court finds that *King* is factually distinguishable. There, law enforcement was investigating a suspect after a serious domestic-violence incident in which the suspect pointed an unloaded gun at the victim's head and pulled the trigger, grabbed a box of ammunition while the vicitim fled, and then chased the victim down and struck her face. *Id*. at *1. The victim provided information to the police about the suspect and the gun. *Id*. Afterward, law enforcement overheard a jailhouse conversation in which the suspect essentially told the victim to give the gun to King. *See id*. at *2. The victim admitted to law enforcement that she gave the gun to King, and "described his appearance and phone number, the location of his house, his live-in girlfriend, and his vehicles." *Id*. Because of King's two prior

1  felonies, law enforcement determined he was barred from possessing firearms. *Id*.

2  "[O]fficers observed King's car parked at his residence—the place where the victim

3  said she delivered the firearm." *Id*. "A judge then authorized the warrant, allowing

4  the search of King's home for '[a]ny firearm' and various other firearm-related

5  items." *Id*.

6        The facts of this case are unlike *King*. The victim there told police that she

7  delivered the firearm to King's house—where he lived. *See id*. Unlike the victim in

8  *King*, the confidential informant here did not relay any information about the

9  Warden residence to law enforcement. Law enforcement merely followed

10 Contreras-Aguilar to the residence after the controlled buy. The Court finds this

11 case is factually more like *Greenstreet*, 41 F.3d at 1309–10, than *King*.

12       Turning to the good-faith reliance exception, the *King* court cites *United

13 Kow*, 58 F.3d 423, *Davis v. United States*, 564 U.S. 229 (2011), and *United States

14 v. Leon*, 468 U.S. 897 (1984) for the standards governing the exception. The Court's

15 prior Order properly cited the governing standard emanating from *Leon*. *See* ECF

16 No. 47 at 14–15. Nonetheless, the Court finds discussion of *Kow* will prove useful.

17       "Evidence seized pursuant to a facially valid search warrant which later is

18 held to be invalid may nevertheless be admissible if officers conducting the search

19 acted in good faith and in reasonable reliance on the warrant." *Kow*, 58 F.3d at 428

20 (9th Cir. 1995) (citing *Leon*, 468 U.S. at 926). "The government bears the burden

ORDER DENYING GOVERNMENT'S MOTION FOR
RECONSIDERATION – 12

of proving that reliance upon the warrant was objectively reasonable." *Id*.

In *Kow*, "the warrant . . . listed entire categories of documents to be seized, encompassing essentially all documents on the premises." *Id*. at 428. The Ninth Circuit noted that it has been "'vigilant in scrutinizing officers' good faith reliance on such illegally overbroad warrants.'" *Id*. (quoting *Ortiz*, 887 F.2d at 1370). It emphasized, "The warrant in this case is less particular than the warrant in *Stubbs*, which also authorized seizure of 'broad classes of documents without specific description of the items to be seized.'" *Id*. (quoting *Stubbs*, 873 F.2d at 212). *Kow* held, "Because the warrant in this case was facially invalid, no reasonable agent could have relied on it absent some exceptional circumstance." *Id*. at 428–29 (citation and internal quotation marks omitted). "The mere fact that the warrant was reviewed by two AUSA's [sic] and signed by a magistrate does not amount to 'exceptional circumstances.'" *Id*. at 429. Further, "[w]hen a warrant is facially overbroad, absent *specific assurances* from an impartial judge or magistrate that the defective warrant is valid despite its overbreadth, a reasonable reliance argument fails." *Id*. (emphasis in original).

This case is like *Kow*. The warrant authorized the seizure of a broad category of dominion and control documents without a specific description of the items to be seized. *See id*. at 428 (discussing *Stubbs*, 873 F.2d at 212). It also vaguely described the prerecorded buy money subject to seizure when providing the exact description

of the buy money was possible. *See id*. at 427 ("[G]eneric classifications in a warrant are acceptable only when a more precise description is not possible."). Law enforcement here knew exactly what they were looking for. *See VonderAhe*, 508 F.2d at 370. Although a state district court judge signed the warrant, which was drafted by the lead detective in this case, that fact does not qualify as exceptional circumstances. *See id*. at 429. And because the warrant here was facially overbroad, and there were no *specific assurances* from an impartial judge or magistrate that the defective warrant was valid despite its overbreadth, the Court finds the Government has not met its burden of proving that reliance upon the warrant was objectively reasonable. *See id*. at 428. For these reasons, the Government's motion for reconsideration of this issue is denied.

Accordingly, **IT IS HEREBY ORDERED**:

1. The Government's Motion for Reconsideration, **ECF No. 48**, is **DENIED**.

//
//
//
//
//
//

2.  This Order hereby supplements the Court's prior Order granting defendant's motion to suppress, ECF No. 47, and both Orders shall be read in conjunction with one another.

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 15th day of January 2021.

_____
SALVADOR MENDOZA, JR.
United States District Judge